No. 13,329.

EDVISE CHENEVERT, WIFE, ETC., vs. AVIT LEMOINE ET ALS.

SYLLABUS.

1. A contract which conveys a lot of ground to another "for and in consideration of the price and sum of six hundred dollars cash in hand paid to the vendor, the receipt whereof is hereby acknowledged and acquittance in full

thereof granted," followed by a paragraph which recites "the purchaser obligating himself his heirs and assigns, to keep and support the vendor and her husband during their lifetime," is a contract of sale and not a contract of rent as defined by C. C. 2779.

2. A clause in the contract which reserves to the vendor the privilege of remaining upon the property, along with the vendee, evidences nothing more than a right of use and habitation.

3. A third clause which asserts that the property shall not be sold by the vendee without the consent of the vendor, if it have any force at all, is construed as meant only to protect the vendor in her right of use and habitation.

APPEAL from the Tenth Judicial District, Parish of Avoyelles—*Lafargue, J.*

*L. J. Ducote* for Plaintiff, Appellee.

*Couvillon & Son* for Defendants, Appellants.

The opinion of the court was delivered by

BLANCHARD, J. On March 22, 1879, plaintiff, a married woman, separate in property from her husband, yet by him authorized, appeared before a notary public and executed an instrument in writing, styled at the time an act of sale.

It recites that "for the consideration hereinafter mentioned, she does by these presents grant, bargain, sell, convey, transfer, assign, set over and deliver * * * unto Avit Lemoine * * * here present accepting and purchasing for himself, his heirs and assigns, and acknowledging delivery and possession thereof, the following described property, to-wit:—"

Then follows a description of the property, being one acre of land in the town of Cottonport, in the parish of Avoyelles.

The act continues:—"This sale is made for and in consideration of the price and sum of six hundred dollars cash in hand paid to the vendor, the receipt of which is hereby acknowledged and acquittance in full thereof granted."

Then, beginning a paragraph, is this clause:—

"The purchaser obligating himself, his heirs and assigns, to keep and support Aurelian Jeansonne and wife during their lifetime; also the privilege to stay with him and partake the said premises as well as himself; further giving the said vendor and her husband the privilege for objecting to a sale of a part of said property, or of the whole,

in favor of any party whatsoever, without the consent of said Edvise Chenevert, or her husband."

Then follows:—"To have and to hold the said described property unto said purchaser, his heirs and assigns forever", after which is a clause warranting the title.

Then appears this paragraph:—

"The purchaser in order to guarantee the said Edvise Chenevert and her husband during their life against all eventualities that could arise on account of the reservations aforementioned, does by these presents hypothecate the above described property in favor of the said Edvise Chenevert and her husband until all privileges therein reserved should be fulfilled."

The "Aurealian Jeansonne" referred to was then and is now the husband of the plaintiff, Edvise Chenevert.

The vendee, Avit Lemoine, was the son-in-law of the vendor, and the parties, with the husband of the vendor, lived together upon the premises described in the act.

The husband of the vendor conducted there a small mercantile business and Lemoine clerked for him. This continued for about three years, when Lemoine engaged in mercantile business on the premises for himself, and continued so to do until 1888 or 1889, when he failed, and made a cession of his property under the insolvent laws.

In this cession was included the property acquired in 1879 from plaintiff, as hereinbefore set forth.

Prior to the cession he had mortgaged the property to Gumbel Bros. & Mayer, a commercial firm of New Orleans, and at the Syndic's sale of the insolvent's property, which took place May 18, 1889, Ferdinand and Cornelius Gumbel, members of the firm, purchased the lot in question. At the time of this sale a paper was read for and on behalf of the present plaintiff, warning purchasers against bidding on the property, and reciting the stipulations hereinbefore quoted, contained in the act by which Lemoine acquired the property, with which the same was burthened.

The paper, further, gave notice that Mrs. Chenevert and her husband would exact from the purchaser of the lot the fulfillment of the clauses in her favor, including that of support.

Ferdinand and Cornelius Gumbel held title to the lot for about two years, when Ferdinand Gumbel, who meanwhile had become liquidator of the firm of Gumbel Bros. & Mayer, sold and conveyed the

same, in his capacity as liquidator, to Avit Lemoine, in whom the
title has since remained. A part of this purchase price was paid in
cash, and for the remainder a mortgage was retained.

During all these years and notwithstanding these various transac-
tions in which the lot figured, the plaintiff and her husband have never
been disturbed in their possession and occupancy of the premises.
They have remained upon the same from the time of the conveyance
to Lemoine in 1879 down to the present time, and are still in posses-
sion.

For years it was jointly occupied by plaintiff and her husband and
Lemoine, but for the past thirteen years Lemoine has not lived upon
the property, but upon an adjoining lot.

After the sale to him in 1879 certain additional improvements were
put upon the premises by the joint action of himself, the plaintiff and
her husband.

When some of the buildings were destroyed by fire, it was Lemoine
who collected and appropriated to his purposes, the proceeds of the in-
surance policies covering the same. It was he who had taken out the
insurance.

A portion of the property was leased for a while to another mer-
chant and Lemoine collected the rent.

The property was, after his purchase, always assessed in his name,
and he paid the taxes thereon.

It appears that Lemoine did not support the old couple—his father-
in-law and mother-in-law—as he had engaged to do, though it does
appear that he offered to them the privilege of taking their meals at
his table.

They did not avail themselves of this offer, nor did they seek to
enforce their rights of support until this suit was brought nearly
nineteen years after the date of the conveyance made by them to Le-
moine, eight and a half years after the date of the insolvent sale of
the property to Ferdinand and Cornelius Gumbel, and six and a half
years after the re-acquisition of the property by Lemoine from Ferdi-
nand Gumbel, Liquidator.

The objects of this suit are various. It is asked, first, that the
mortgage executed by Lemoine in 1888 to Gumbel Bros. & Mayer on
the property be declared to have been an absolute nullity; second, that
the adjudication of the property to F. and C. Gumbel at the sale of
the insolvent estate of Lemoine in 1889 be decreed null and void;

third, that the sale of the property made by Ferdinand Gumbel, Liquidator, in 1891, to Lemoine be declared an absolute nullity; fourth, that the contract entered into by the plaintiff with Lemoine in 1879 be rescinded and annulled, and that she (plaintiff) be decreed the owner of the property in question, free of incumbrances placed thereon by Lemoine or other parties; fifth, for judgment *in solido* against the defendants for $8640 rent charges on the property from 1879 down to the institution of the suit, and for the further sum of $40 per month rent charges since then; and, sixth, that plaintiff be recognized as having a mortgage on the property to secure the said sums.

It is easily apparent that these demands, or some of them, are inconsistent with, and preclusive of, the others.

The prayer for the avoidance of the mortgage to Gumbel Bros. & Mayer, given in 1888, is predicated upon the allegation that it was executed without plaintiff's consent, and is violative of the clause of the act of sale which gave plaintiff the right to object to the alienation of the property.

The prayer for the avoidance of the adjudication of the property to F. and C. Gumbel at the insolvent's sale in 1889, and that for the avoidance of the sale made of it by Ferdinand Gumbel, Liquidator, in 1891 to Lemoine, are urged upon the same ground, and the latter upon the additional ground that Ferdinand Gumbel was liquidator of the firm of Gumbel Bros. & Mayer, and as such could not sell property the title of which stood upon the records in the name of F. and C. Gumbel; that it was the sale of property belonging to another, etc.

The prayer for rescinding and annulling the contract made between plaintiff and defendant in 1879, by which the latter acquired title to the property, is based upon allegations of non-fulfillment of the terms of the contract in certain particulars, and active violation of its terms in other particulars.

The prayer for personal judgment *in solido* against the defendants is based upon allegations of non-support from the date of the contract in 1879, and the liability of Lemoine's assignees therefor from the date of their pretended acquisition of the title.

And the prayer for the recognition of mortgage rights on the property to secure the sums claimed, is predicated on the allegation of its hypothecation in the original contract to secure the rights reserved therein to the vendor. It is contended by plaintiff that this mortgage

continues to exist notwithstanding it has not been re-inscribed in the mortgage book since 1879.

Defendants urge various matters in defense, including prescription.

There was judgment below in favor of plaintiffs against defendants *in solido* for $900, with interest, and the further sum of $25 monthly, the value fixed by the court as the equivalent of the monthly support of plaintiff and her husband, with recognition of mortgage upon the lot of ground to secure payment thereof.

With regard to the various other prayers of plaintiff's petition, the judgment is silent.

Only one of defendants has appealed—Ferdinand Gumbel. It was stated in oral argument by counsel for defendants that the reason an appeal was not taken on behalf of the heirs and representatives of Cornelius Gumbel, deceased, is that they are not condemned in the judgment; that the judgment is against Avit Lemoine, Ferdinand Gumbel and *Cornelius Gumbel;* that the latter is a dead man, and no appeal, it was considered, could be taken by a dead man.

Plaintiff has not appealed from this judgment, which sustains only a part of her many demands, and in this court has asked no amendment of the judgment beyond an increase in the monied allowances made to her, on the ground that the monthly support of herself and her husband should be fixed at $37.50 instead of $25.

The only issues, therefore, to be considered on this appeal are (1) whether or not, under the facts and the law of the case, Ferdinand Gumbel is rightly condemned to pay plaintiff the sums of money decreed against him; and (2) whether or not plaintiff is entitled to recognition of the mortgage claimed by her and accorded in the judgment below as against the said Ferdinand Gumbel, who, with Cornelius Gumbel, acquired the property by purchase at the insolvent sale of Lemoine in 1889, and who, subsequently, in his capacity as liquidator, sold it to Lemoine and retained a mortgage to secure the greater part of the purchase price. Has the plaintiff a mortgage on this property, as against Lemoine, which primes that retained by Gumbel?

The conclusion reached is that in both respects the judgment appealed from is erroneous.

When Ferdinand Gumbel purchased the property, along with Cornelius Gumbel, at the insolvent sale, the adjudication thereof to them vested in them such interest in the property as Lemoine himself had, but entailed upon them no personal liability for the obligations which

Lemoine had undertaken towards the plaintiff. It would be singular, indeed, if, buying the title to the property at the Syndic's sale, never disturbing plaintiff in her occupancy of the premises, holding the nominal title two years and then retransferring same to Lemoine, would create on their part an obligation to support plaintiff and her husband. The reading of the paper or protest at the time of the sale by plaintiff's attorney could not and did not impose on the purchasers an obligation where none otherwise existed.

The contract made between plaintiff and defendant in 1879 was not a contract of rent (C. C. 2779), but one of sale.

All the essentials of a sale were there—a thing, a price fixed, the consent of the parties.

The title of the thing was passed *and the price paid*. Nor was this a sale with a rent reserved, such as that spoken of in C. C. 2786. That which was named as *the consideration* of the sale was $600 and it was paid. The obligation of keeping and supporting plaintiff and her husband, while expressed in the act and assumed by the vendee, is not referred to as entering into the *cause or consideration* of the contract. It was, therefore, not of the essence of the contract. It was not a charge imposed upon the property itself, which is inherent in it, to which it is perpetually subject, and which followed it into whatever hands it passed. Succession of Canonge, 1 La. Ann. 211.

A mortgage could well be reserved upon the property to secure the performance of the obligation undertaken by Lemoine to support the old couple, and was so reserved; but it was nothing more than a mortgage, subject, like all mortgages, to the limitations prescribed by the law, among others that of lapsing if not reinscribed, at the end of ten years, in the mortgage book. There had been no reinscription of this mortgage, and long before this action was instituted it had prescribed as to third persons. It was so prescribed when Ferdinand and Cornelius Gumbel purchased at the insolvent sale in May, 1889. See Heirs of Bourgeois vs. Thibodeaux, 23 La. Ann. 20.

That part of the contract between plaintiff and defendant which stipulates for the former the privilege of remaining upon the property evidences nothing more than a right of use and habitation (C. C. 626, 627), and it is considered that the other clause, which asserts that the property, either in whole or in part, should not be sold by the vendee without the consent of the vendor, if it have any force at all, was

intended only to protect plaintiff and her husband in their right of use and habitation.

In other words, the property, whose ownership became vested in Lemoine, was not to be alienated by him in such a way that the old couple should lose the right of remaining upon it. It was a crude way, suggested no doubt by the notary and adopted by them, of protecting their reserved rights in this regard. They have been upon the property all the time, are there now, and have the right to remain there during their natural lives, and none of the alienations which have taken place since Lemoine first acquired the property can have the effect of disturbing this right.

But beyond this plaintiff has no pretensions with regard to the property that can be sustained, so far as the present appellant is concerned.

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from, in so far as it decrees the recovery of the sums mentioned therein against Ferdinand Gumbel, and in so far as it awards plaintiff a mortgage on the property in question, be annulled, avoided and reversed, and that plaintiff's demand against the said Gumbel and against the said property be rejected at her costs.

Rehearing refused.